**JOSEPH L. DWYER, Plaintiff**

v.

**DAVID RUSSELL McDONALD, Defendant**

No. 8-1911

High Court of American Samoa

Civil Jurisdiction, Appellate Division

July 13, 1911

W. M. CROSE, Governor, Commandant of U.S. Naval Station, *President of the High Court*

---

This is an appeal from the judgment of the High Court Civil Jurisdiction, in cause No. 8-1911 between Joseph L. Dwyer, plaintiff and David Russell McDonald, defendant.

The complaint alleged that the defendant slandered the plaintiff on the 28th day of April, 1911, in the office of the

Governor of Tutuila, and that such slander made at that time had been previously made to a lady, whose name is unknown, and had been previously made to divers other persons. There are six well defined counts in complaint, each count alleging certain words to have been spoken in the office of the Governor and previously to a lady unknown to plaintiff and also to divers other persons. In each case the plaintiff alleged that the words constituted slander.

The complaint was filed on May 15, 1911. A demurrer was filed to the complaint on May 29, 1911, by defendant, which demurrer was heard on May 31st by the High Court and overruled. On June 7, 1911, the defendant filed an answer in denial. Trial began on June 12, 1911. On June 13th the plaintiff rested his case. The defendant then moved for judgment for defendant, which motion was sustained by the court and judgment rendered in favor of defendant.

The decision was given orally in open court and the court at that time stated that a written decision would be presented if asked.

On June 13th, some time after adjournment, the plaintiff requested a written decision and that the written decision be given in open court. On June 22nd the court presented its written decision in said cause, but not in open court.

Plaintiff appeals from said decision, assigning seven errors. These will be considered *ad seriatim:*

I. It appears from the evidence that on April 28th, 1911, the Governor of Tutuila addressed a note to David Russell McDonald (defendant), requesting the presence of said McDonald in the Governor's office, officially; that upon the arrival of said McDonald the Governor asked him if he would object to stating in the presence of Mr. Joseph L. Dwyer (plaintiff) certain remarks which he had made on

April 17th, 1911 to Mrs. Crose, wife of the governor, concerning the said Dwyer; that the said McDonald answered in the negative; that, in the presence of the said Dwyer and the Governor the said McDonald then made certain statements, among them, statements of which the plaintiff complains; that there were no other witnesses at this interview, and at its completion the Governor stated that it would not go beyond his office.

The Governor testified that he did not himself know what statements had been made by the defendant to Mrs. Crose; that he had not permitted the statements to be repeated to him. The testimony of Mrs. Crose shows that she is the "certain lady whose name is unknown to the plaintiff," alluded to in the complaint, but that she heard none of the statements charged in complaint as having been made to her by defendant, with exception of the statement that Mr. Dwyer had given liquor to natives.

The testimony of the plaintiff shows that he did not himself know that Mrs. Crose was the "unknown lady" referred to in the complaint until her identity was disclosed during the testimony of the Governor on the witness stand.

The plaintiff on the witness stand testified to having given liquor to certain natives, stating that this liquor was given medicinally.

There is no evidence to prove that the statements specified in the complaint were made to "divers other persons."

■ It is a well known principle of law that publication of defamatory statements, in order to be complete must be heard and understood by some third person.

"Publication in the law of libel and slander, means the transmission of ideas and thoughts to the perception of a person other than the parties to the suit." 1 *Kinkead's Com., Torts,* Sec. 385.

"It is a familiar rule that the defamatory matter which is spoken or written must be understood by those to whom it is communicated, and also if one who had an opportunity to hear the slander

and see the libel did not do so in fact, it will not be held to be published as to him." 1 *Kinkead's Com., Torts,* Sec. 387, citing, *Sheffill v. Van Deusen,* 13 Gray (Mass.) 304, 74 Am. Dec. 632; *Fonville v. McNease,* Dudley Law (S.C.) 303, 31 Am. Dec. 556.

Since therefore Mrs. Crose heard none of the statements complained of, except that plaintiff had given liquor to natives, the publication as to her is not proved, except in that one particular.

The court did not err in finding that the other statements alleged to have been spoken to a certain "unknown lady" were not proven by the evidence.

■ II. The conversation in the office of the Governor was held by the High Court to be privileged. I am of the opinion that said conversation was privileged—was one of "absolute privilege." The conversation was in the nature of an investigation made in his official capacity by the Governor. If it had been shown that Mrs. Crose heard and understood all that was said to her by the defendant on April 17th, it is held that the testimony of the Governor would be relevant in proving the admission made by defendant as to what was said to Mrs. Crose on that date, but that the making of these statements to the Governor was not in itself actionable.

The Court did not err in deciding that the conversation noted was privileged.

III. The complaint alleged that defendant "did falsely, maliciously, and with utter disregard of the truth state the words as follows, to wit,—'Yes, he has furnished liquor to natives. Mr. ........................ (mentioning the name of a man residing in the United States Naval Station, Tutuila) and Mrs. .............................. (mentioning the name of a woman residing in the same place) were constantly drinking liquor in Mr. Dwyer's room.'"

It is alleged that this statement was made to the Governor and to a lady residing in the United States Naval

Station whose name is unknown to plaintiff; that defendant meant and intended to convey the meaning that plaintiff had violated the Regulations of the United States Naval Station, forbidding the furnishing of liquor to natives; that the said statement falsely accused plaintiff with the commission of a crime punishable by penal servitude.

It appears from the evidence given by plaintiff that he had given liquor to natives. The record of his testimony reads as follows:

"Q  Have you at any time, ever furnished liquor to natives?

A  Yes, I have.

Q  Do you remember any special instances upon which you have furnished liquor to natives?

A  Yes.

Q  Could you make a reasonable estimate as to how many?

Q  Not more than a dozen times?

A  No.

Q  Would you be willing to state or give the names of those natives to whom you furnished liquor?

A  Yes, I might say, Mauga, the Governor, Mauga, the Judge, and Tufele, the District Governor of Manua.

Q  You remember no others to whom you have furnished liquor, no natives?

A  I cannot remember, understand that when liquor was furnished, it was given to the natives medicinally.

Q  Are you a physician?

A  I am not.

Q  Is there a physician residing in these islands?

A  There is.

Q  And is there any law prohibiting the giving of alcoholic drinks to natives?

A  There is, I get permission—I have a permit and have the right to furnish liquor to the natives, no but under section of liquor law I have.

Q  In the Governor's testimony, a Mrs. Willis has been mentioned, and certain statements in the claim are similar to certain statements made by the Governor, referring to a Mrs. Willis. Do you know Mrs. Willis?

A   I do, and I wish to amend, if she is considered as a native, I have given her liquor,—medicinally.

Q   Have you given Mrs. Laulii Willis liquor, medicinally, on one or many occasions?

A   Several times. She came to me for liquor several times for her children, and a few times I think for Mrs. Debelle, and her daughter-in-law. I gave her very small quantities of liquor.

---

Q   How often have you given liquor to Mrs. Willis?
A   Very often.
Q   You have given her liquor often?
A   Yes.
Q   In what quantities?
A   In small quantities.
Q   Did she take the liquor away with her?
A   She has taken liquor away to give to her daughter-in-law May Willis, and Mrs. Debelle."

*Regulation* No. 3, 1900, of the United States Naval Station, Tutuila, provides:

"2. In this ordinance the term 'natives' shall in its reference mean not merely aboriginal natives of Samoa but aboriginal natives of India or of Fiji or of German-Samoa or of any island in the Pacific Ocean, or any person born of a foreign father with a Samoan mother and who cannot by law be recognized as being a subject or citizen of the country to which his father is a subject or citizen. . . .

3. No spiritous vinous or fermented liquors or intoxicating liquor or drink whatever shall be sold, furnished to or procured for any native by any person except as hereunder provided. . . . Exemptions. . . . (e) To any person not being a publican, and not being within a public house, who shall give to any native for any urgent cause or necessity, and without recompense or remuneration, any liquor, when such liquor is given solely and purely for medicinal purposes; but it shall rest with the person giving such liquor to prove satisfactorily the existence of such urgent necessity and, failing such proof, such person shall be liable to the punishment provided for in paragraph 4 of this Ordinance."

It is a well known fact that Mrs. Willis, otherwise

known as "Laulii", is a native within the meaning of this Regulation.

The plaintiff made no attempt to *prove* that the liquor furnished to natives came under the exemption noted, other than his own statement, nor to prove that the defendant was not justified in stating, without explanation, that the plaintiff had given liquor to natives. It is therefore held that the court did not err in deciding that the plaintiff on the stand acknowledged giving liquor to natives, and that it was not necessary for the court to qualify its statement.

IV. In the fourth item the plaintiff assigned as error, that the court erred in finding that no case has been proven by plaintiff. After a careful examination of the testimony I am of the opinion that the court did not err in this respect.

V. The transcript of the proceedings shows that the court did render an oral decision in open court and it is held that it was not obligatory upon the court to render a written decision in open court, the written decision not having been called for until after the court had adjourned.

VI. The plaintiff assigns as sixth error that the court erred in overruling the objection to the testimony of Mrs. Crose as to what her daughter had told her. It is noted that the plaintiff offered no objection to questions concerning his reputation, until after several questions of this nature had been asked and answered, when a question was objected to and at the end of the testimony the counsel for plaintiff said, "May it please the court, we ask to have the answers to all those questions that are founded upon gossip to be struck out. How can the plaintiff's reputation and character be influenced by such."

It is held that this motion is too general in its terms, and for this reason the court was right in overruling it. If the

motion had been specific it would seem that there is testimony given which should have been stricken out.

■ The plaintiff in his appeal, for the first time, shows by authorities the impropriety of allowing testimony concerning his character, but the time for such objection was when the first question was asked and not at this time.

■ It is held that the court did not err in its decision upon this ruling. Furthermore, in considering the fifth and sixth items assigned as errors, it is held that there would have been no prejudice to plaintiff even had the court erred as charged, there being nothing on which the errors could operate after the court held adversely to claims of plaintiff on the first, second, third, and fourth items of the appeal.

■ VII. The seventh item urged by plaintiff as error is that the court erred in requiring plaintiff to pay the costs of the suit, said order implying that plaintiff should pay the entire costs of suit, whereas defendant should be taxed costs upon hearing of demurrer at which hearing defendant was unsuccessful.

The plaintiff makes the following citation:

"If upon a hearing any demurrer or plea is overruled the plaintiff should be entitled to costs in case up to that period, unless the court should be satisfied that defendant had good grounds in point of law or fact to interpose the same, and it was not interposed vexatiously and to cause delay."

The plaintiff during the hearing upon the demurrer in his argument set forth that defendant had interposed the demurrer vexatiously and to cause delay, while defendant held that he had good grounds in point of law to interpose the same. It seems clear, therefore, that the court arrived at its judgment after a careful consideration of the pleas of plaintiff and also of the pleas of defendant. The question of costs was for the court to decide.

It is held that the court did not err in its decision that the plaintiff should pay the costs.

Judgment affirmed.